MICHAEL B. LOVE, WSBA 20529
RIVERSIDE NW LAW GROUP, PLLC
905 West Riverside Ave. Ste. 208
Spokane, WA 99201
Telephone: (509) 212-1668
Email: mbl@rnwlg.com

MATTHEW Z. CROTTY, WSBA 39284
RIVERSIDE NW LAW GROUP, PLLC
905 West Riverside Ave. Ste. 208
Spokane, WA 99201
Telephone: (509) 850-7011
Email: mzc@rnwlg.com

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID KRZESNI, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> WELLPINIT SCHOOL DISTRICT, a legally separate body corporate or political; and JOHN ADKINS, an individual, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

"Often the best source of information about waste, fraud, and abuse in government is an existing government employee committed to public integrity and willing to speak out. Such acts of courage and patriotism, which can sometimes save lives and often save taxpayer dollars, should be encouraged rather than stifled …"

Former United States President Barack Obama.

COMPLAINT FOR DAMAGES - 1


Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

## COMPLAINT

Plaintiff, David Krzesni, ("a protected whistleblower") through counsel and pursuant to Title 41, United States Code, section 4712, and under Washington's common law tort for wrongful discharge which also protects whistleblowers, alleges that he was retaliated against and discharged from employment with the Wellpinit School District No. 49 ("School District") for making a protected whistleblower disclosure by reporting abuse of federal government funds. As grounds therefore, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction of this lawsuit under 28 U.S.C. §§ 1331 and 1343(a) (3).

2. Venue is proper under 28 U.S.C. § 1391(b) (2).

### NOTICE OF TORT CLAIM & EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. A proper notice of tort claim was filed and served on the School District pursuant to RCW 4.96.020 on August 4, 2023. More than 60 days have passed since the service and filing of the tort claim.

4. Mr. Krzesni made a complaint to the Department of Education Office of Inspector General on July 12, 2023. Over 210 days have passed since Mr. Krzesni filed that complaint with the Department of Education's Office of Inspector General.

COMPLAINT FOR DAMAGES - 2

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

Accordingly, Mr. Krzesni has exhausted his pre-suit administrative remedies for bringing his federal claim.

### PARTIES

5.  Plaintiff is a citizen of the United States and whose former address while employed with the School District was 24214 N. Westlake Dr. Nine Mile Falls, WA, 99206. Nine Mile Falls is in both Spokane and Stevens County, Washington. Plaintiff's current address is 93 Beeson Rd, Sequim, Washington 98382.

6.  Defendant, School District, is a public school district PK, K-12 located at 6231 Old School Rd. Wellpinit, Washington 99040.

7.  Defendant, John Adkins, is the Superintendent of School District and is the supervisor, member of management or agent of the School District who initiated the retaliatory discharge of Plaintiff.

### STATEMENT OF FACTS

8.  Plaintiff realleges the above paragraphs 1 through 6 as if fully set forth herein.

9.  The School District hired Plaintiff on January 10, 2023, to the position of Project Director for the Department of Education Native Youth Community Project grant. This was a five-year grant. Plaintiff was of the expectation that he would oversee the entire five-year grant. Plaintiff had a written personnel contract

COMPLAINT FOR DAMAGES - 3

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

with the School District effective January 10, 2023, through September 30, 2023, but had the expectation this would roll over into succeeding years to the end of the grant.

10. On January 11, 2023, Plaintiff learned that the School District intended to use Native Youth Community Project (NYCP) grant funds for a trip to Hawaii. Having just started his job, Plaintiff was of the understanding that the Department of Education had approved use of NYCP funds for the Hawaii trip. However, something about the Hawaii trip and using federal money for it did not sit right with Plaintiff.

11. On February 10, 2023, Plaintiff had conferred via Microsoft Teams with Donna Bussell, NYCP Program Officer, Office of Indian Education about use of federal grant money for travel and per diem. Ms. Bussell stated that per diem was not allowed for student travel, but that an incentive was possible.

12. On February 21-22, 2023, Plaintiff had meetings with Rainy Anderson (School District's Business Manager) and Laina Walker (the middle school and high school principal for the School District). In both meetings, Plaintiff expressed concerns about the cost of the trip and conveyed the information he had received from Ms. Bussell. In the meeting on February 21, 2023, Plaintiff expressed to Ms. Anderson that he was genuinely concerned about justifying expenses. That is about

COMPLAINT FOR DAMAGES - 4

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

the time Plaintiff realized the Department of Education must not be aware of the plans.

13. Ms. Anderson and Plaintiff also discussed that the School District had planned to pay students who attended a large per diem. Ms. Anderson and Plaintiff agreed that the School District would provide a smaller "incentive" instead of a per diem, since this was not allowed per Ms. Bussell.

14. Ms. Anderson and Plaintiff met the following day February 22, 2023, with Ms. Walker to discuss the incentive versus per diem and to go over the budget for the trip. That is also the point where Plaintiff shared with Ms. Walker that the Department of Education had not given the School District permission to utilize the funds.

15. On February 22, 2023, Plaintiff discussed his concerns about the trip with the School District's program evaluator Noe Medina. Mr. Medina also expressed that he had concerns about the cost of the Hawaii trip and that the School District could use other funds if necessary.

16. On February 27, 2023, Plaintiff addressed the guidelines for the Hawaii trip with Donna Bussell via an email communication. Ms. Bussell advised Plaintiff accordingly in an email communication that the NYCP grant could not pay for the Hawaii trip:

> On Mon, Feb 27, 2023, at 10:23 AM Bussell, Donna donna.bussell@ed.gov wrote:

COMPLAINT FOR DAMAGES - 5

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

> Hi David,
> Just quickly reviewing the budget and I see travel to Hawaii. This was not in the original grant application therefore it will not be approved. … If you could revise the budget that would be great. Remember to adhere to the grant narrative and objectives when revising the budget.
> Thank you.

17. Plaintiff immediately told Kim Ewing, the elementary school principal, that Ms. Bussell said the School District cannot use the grant funds for the Hawaii trip. Plaintiff discussed with Ms. Ewing that he would follow up with Ms. Bussell to ask whether the School District could further discuss it. At that time, Plaintiff and Ms. Ewing discussed that it would be possible to utilize other funds. Plaintiff and Ms. Ewing agreed that they would attempt to get approval, but that they would use other funds in the event they were not able to obtain approval.

18. On or around February 27, 2023, Plaintiff told Ms. Anderson that the Department of Education said the School District could not use grant funds for the Hawaii trip. Ms. Anderson told Plaintiff that other funds would be used for the Hawaii trip.

19. From March 6th through the 14th, 2023, Plaintiff attended the Hawaii trip with the understanding that grant money was not paying for it.

20. On March 16, 2023, (after the Hawaii trip) Plaintiff had a follow-up conversation with Mr. Medina. Plaintiff reiterated to Mr. Medina in the meeting that the NYCP could not fund the trip. On multiple occasions Mr. Medina affirmed

COMPLAINT FOR DAMAGES - 6

Plaintiff's concerns about spending, discussed the possibility of audit exceptions, and said that he would facilitate a conversation about that with the School District.

21.  On April 12, 2023, at 1:00 pm Ms. Anderson told Plaintiff that the NYCP funds **were used** for the Hawaii trip. This happened at an in-person meeting while Plaintiff was preparing the annual performance report for the grant. Plaintiff started the meeting by discussing our upcoming annual performance report. Plaintiff said that he was nervous because the budget for the School District was not completely approved, and the Hawaii trip was unresolved. Ms. Anderson told Plaintiff she had already drawn down the funds for the trip. Plaintiff said that he was not aware the funds had been drawn down. Ms. Anderson stated "we'd return the money" if the Department of Education had a problem with the School District using money for the trip. The meeting ended with Plaintiff feeling uncomfortable.

22.  On April 27, 2023, Plaintiff reported to the Department of Education the use of federal grant money for the Hawaii trip and attempted to justify the spending. After submitting the report, Plaintiff emailed Donna Bussell, the School District's program officer at the Department of Education to request a video call. Plaintiff also asked Jennifer Lebret, director for a separate NYCP grant held by the Spokane Tribe of Indians to join the meeting.

23.  On May 8, 2023, Ms. Lebret and Plaintiff met with Ms. Bussell. Plaintiff explained that he was not aware until preparing the report that NYCP funds

COMPLAINT FOR DAMAGES - 7

Riverside NW Law Group, PLLC
905 W. Riverside Ave., Ste 208
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

were used for the Hawaii trip. Plaintiff's prior understanding was that the School District had used other funds when Plaintiff notified them that the expenditure was not approved by the Department of Education. Plaintiff told Ms. Bussell that Plaintiff felt obligated to include that expenditure in the Annual Performance Report (APR) and attempt to justify it, but that Plaintiff also wanted to be honest with them that he had not authorized it and that he had several concerns with the trip to Hawaii and the School District's spending.

24. On May 10, 2023, Ms. Bussell forwarded to Plaintiff an email from Ms. Anderson which was originally sent on May 9, 2023. The email was requesting a meeting between Ms. Bussell and the School District's superintendent, John Adkins.

25. On May 16, 2023, at 1:28 PM, Ms. Bussell emailed Plaintiff, Ms. Anderson, Mr. Adkins, and others that the grant money to the School District was being placed on "reimbursement status."

26. Hours later after the email from Ms. Bussell, on May 16, 2023, Plaintiff was called into a meeting with Mr. Adkins and Ms. Anderson. Plaintiff was notified by Mr. Adkins that his contract with the School District would not be renewed when it expired on September 30, 2023.

27. Multiple courts hold that non-renewal of an employment contract is a material adverse action. *Black v. Brewer*, 302 F. App'x 669, 670-671 (9th Cir. 2008);

COMPLAINT FOR DAMAGES - 8

*Ortiz v. Alvarez,* 341 F. Supp. 3d 1087, 1103 (E.D. Cal. 2018 ); *Leibowitz v. Cornell Univ.,* 584 F.3d 487 (2d Cir. 2009) (holding that "a non-renewal of an employment contract itself is an adverse employment action");*Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315,320 (3rd Cir. 2008)("The failure to renew an employment arrangement, whether at will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII."); *Carter v. Univ. of Toledo,* 349 F.3d 269, 270-71 (6th Cir. 2003) (reversing district court's grant of summary judgment in the employer's favor on plaintiffs Title VII claim in connection with employer's failure to renew her employment contract); *Minshall v. McGraw Hill Broadcasting Co., Inc. ,* 323 F.3d 1273, 1279-82 (10th Cir. 2003) (finding sufficient evidence that an employer unlawfully discriminated against an employee in finding not to renew his contract); *Mateu-Anderegg v. School Dist. Of Whitefish Bay,* 304 F.3d 618 (7th Cir. 2002) (finding it "undisputed ... that she suffered an adverse action" where plaintiff challenged the non-renewal of her contract.).

## **CLAIMS**

28. Plaintiff realleges the above paragraphs 1 through 27 as if fully set forth herein.

***A.    Federal Claim against School District and Adkins.***

29.     Federal law protects *whistleblowers* like Plaintiff under Title 41, United States Code, Section 4712 ("Act").

30.     It is illegal for an employee of a Federal Contractor, subcontractor, grantee, or subgrantee or personal services contractor to be discharged, demoted, or otherwise discriminated against for making a protected *whistleblower* disclosure.

31.     Plaintiff is a protected *whistleblower* under the Act because he was an employee of the School District who is a *grantee* of federal funds who disclosed information that Plaintiff reasonably believed was evidence of *an abuse of authority relating to a Federal grant.*

32.     The term "*abuse of authority*" means an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency.

33.     Plaintiff is also a protected *whistleblower* under the Act because he disclosed information to a management official or other employee of the *grantee* School District.

34.     Plaintiff was subjected to a retaliatory discharge in close proximity to his disclosure as a *protected whistleblower* under the Act by the School District and Mr. Adkins when he was informed on May 16, 2023, that his contract would not be renewed with the School District when it expired on September 30, 2023.

35. As a result of the conduct of Defendants, Plaintiff has sustained substantial damages both economic and non-economic.

**B.     *State Wrongful Discharge Claim against School District and Adkins.***

36. Plaintiff also asserts a separate claim for common law tort of wrongful discharge under Washington law against Defendants.

37. "Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct." *Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 208 (2008).

38. Plaintiff reported employer misconduct, here the unauthorized use of grant money to pay for a trip to Hawaii.

39. Defendant Adkins had clear animus towards Plaintiff based upon his exercising his rights as a protected *whistleblower* as Defendant Adkins terminated Plaintiff's employment (effective September 30, 2023), within hours of learning that the District's grant money was being placed in "reimbursement" status.

40. As a result of the conduct of Defendants, Plaintiff has sustained substantial damages both economic and non-economic.

## PRAYER FOR RELIEF

Plaintiff requests the following relief from the Defendants under state and federal law:

A. Injunctive and Declaratory relief.

B. Compensatory and Exemplary Damages.

C. Lost wages, prejudgment interest, front pay, and adverse tax consequences of any award for economic damages.

D. Emotional Distress and Mental Anguish Damages.

E. Attorney Fees and Costs.

F. All other relief that is just and equitable.

DATED this 8th day of February 2024.

RIVERSIDE NW LAW GROUP, PLLC

By: *Matthew Z. Crotty*
Michael B. Love, WSBA No. 20529
Matthew Z. Crotty, WSBA No. 39284
905 West Riverside Ave. Ste. 208
Spokane, Washington 99201

*Attorneys for Plaintiff*